**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| AMAZE SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRINTBOX SP. Z O.O. <br><br> Defendant. | Case No.  5:26-cv-05119-DCF |

**COMPLAINT**

Plaintiff Amaze Software, Inc., ("Amaze"), for its Complaint against Defendant Printbox Sp. z o.o. ("Printbox"), alleges as follows:

**NATURE OF ACTION**

1.      On or around April 21, 2022, Amaze executed a Master Services Agreement with Sam's West, Inc. (the "Sam's Club MSA") to provide a "software as a service" product and related support services (including, but not limited to, online photo and personalization services as more specifically set forth in the Sam's Club MSA) (the "Sam's Club Services").

2.      Amaze also entered into a related Subcontract Agreement with Printbox effective April 21, 2022.  A redacted copy of the Agreement is attached hereto as Exhibit 1.

3.      Pursuant to the Subcontract Agreement, Printbox agreed to comply with and be bound by the requirements, clauses, provisions, covenants, representations, warranties, and obligations set forth in the Sam's Club MSA and to provide the "Printbox Services" defined in Statement of Work No. 1 attached to the Subcontract Agreement, including the SaaS Services, Deliverables, Documentation and any other work conducted by Subcontractor, for the benefit of Amaze and Sam's Club as set forth and described in the Subcontract and the Sam's Club MSA.

1

4.      Amaze brings this action against Printbox due to Printbox's continual, material breaches of Subcontract Agreement and related tortious conduct.

5.      The culmination of Printbox's breaches and bad acts occurred on February 3, 2024, when it unilaterally cut off Amaze's access to the Printbox CMS and thereby prevented Amaze from fulfilling its obligations under the Sam's Club MSA.

6.      Amaze now understands that Printbox was working all along to push Amaze out of its deal with Sam's Club, replace Amaze as a "Service Provider" under the Sam's Club MSA, and thereby take all of the revenue generated from the Sam's Club MSA for itself. Indeed, that is what actually occurred as of April 25, 2024, when Amaze was forced to terminate Sam's Club MSA and, on information and belief, Printbox replaced Amaze as the "Service Provider" under the Sam's Club MSA.

**PARTIES**

7.      Amaze is a corporation organized under the laws of the State of Delaware with its principal place of business located at 150 Paularino Avenue, Suite D-200, Costa Mesa, CA 92626.

8.      Upon information and belief, Printbox is a Polish business entity organized under Polish law and with a principal place of business located at Aleja 29 Listopada 20, 31-401 Krakow, Poland. Upon information and belief, all its owners and members are citizens of Poland.

**JURISDICTION AND VENUE**

9.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) as Amaze and Printbox are not citizens of the same state, Amaze having a principal place of business in California and Printbox being a foreign corporation of Poland, and the amount in controversy exceeds $75,000, excluding interests and costs.

10.    This Court has personal jurisdiction over Printbox in this action as it extensively does business in this judicial district and, moreover, is bound by the terms of the Subcontract Agreement, which provides for exclusive jurisdiction in Arkansas.

**COUNT I**
**BREACH OF CONTRACT**

11.    Amaze restates and realleges each allegation contained in the foregoing paragraphs of its Complaint as set forth in full herein.

12.    Amaze fully has fully performed under the Subcontract Agreement from its inception through February 3, 2024, when Printbox unilaterally cut off Amaze's access to the Printbox Content Management System ("CMS") and thereby prevented Amaze from, *inter alia,* fulfilling its obligations under the Sam's Club MSA.

13.    Despite Printbox's multiple, continual material breaches of the Subcontract Agreement, as of today's date, Amaze has fully paid all of Printbox's invoices under the Subcontract through February 3, 2024.

14.    Printbox was in material breach of the Subcontract Agreement because it was unable to (or refused to) timely deliver a solution for uploading assets across all product families that did not rely on manually uploading CSVs.

15.    Printbox was in material breach of the Subcontract Agreement because it was unable to (or refused to) timely deliver a solution for assigning product and attribute data in the Printbox CMS.

16.    Printbox was in material breach of the Subcontract Agreement because it was unable to (or refused to) timely provide in-app help or built in guidelines for content vendors.

17.    Printbox was in material breach of the Subcontract Agreement because it was unable to (or refused to) timely respond to questions from Amaze and/or its vendors which were posted to the shared Slack channel for that purpose.

18.    Printbox was in material breach of the Subcontract Agreement because it was unable to (or refused to) timely deliver fully configured design workspaces in advance of applicable launch dates.

19.    Printbox was also in material breach of the Subcontract Agreement because it was late to deliver the full mobile solution which caused Sam's Club to pause promotions in the holiday season, which negatively impacted revenues.

20.    From on or around February 3, 2024, through the termination date of the Subcontract Agreement effective on April 26, 2024, Printbox was in material breach of the Subcontract Agreement because it unilaterally cut off Amaze's access to the Printbox CMS as of February 3, 2024, and, *inter alia*, impaired Amaze's ability to fulfill its obligations under the Sam's Club MSA. Sam's Club terminated the MSA with Amaze and, upon information and belief, contracted directly with Printbox.

21.    Printbox's material breaches of the Subcontract Agreement referenced in the Paragraphs 13-19 above remained uncured by Printbox until Amaze terminated the Subcontract Agreement as of April 26, 2024, by sending a notice of termination to Printbox.

22.    Amaze's notice of termination stated that Printbox was in material breach of the Agreement and that the breach remained uncured by Printbox, despite notice of the breach provided by Amaze.

23.    Amaze's notice of termination also stated: "As Printbox did not fulfill its obligations to Amaze under the Subcontract Agreement between February 1, 2024 and the

Termination Date, Amaze will not make payment on any invoices submitted to it by Printbox relating to that period."

24. Indeed, even though Printbox unilaterally cut off Amaze's access to the Printbox CMS as of February 3, 2024, and Amaze properly terminated the Subcontract Agreement as of April 26, 2024, Printbox still continued to invoice Amaze for payments under the Subcontract Agreement through June 2024.

25. Amaze has fully performed all of its covenants and obligations under the Agreement, except those whose performance has been waived or legally excused. For example, Amaze did not pay any Printbox invoices sent on or after February 1, 2024, because, on February 3, 2024, Printbox unilaterally cut off Amaze's access to the systems and services provided under the Sam's Club MSA and the Subcontract Agreement, which (1) was yet another a material breach of the Subcontract Agreement; (2) impaired Amaze's ability to fulfill its obligations under the MSA; and (3) contributed to causing significant damages to Amaze.

26. Implicit in the Subcontract Agreement is a covenant of good faith and fair dealing, obligating the parties to act towards each other in good faith, to deal fairly with one another, and to do everything that the Subcontractor Agreement presupposes to accomplish its purposes. For the reasons stated herein, Printbox has breached the covenant of good faith and fair dealing by committing the material breaches discussed above.

27. As a direct and proximate result of Printbox's breaches as described above, Amaze has been damaged in an amount to conform to proof at trial, but not less than $800,000 in relation to Printbox's material breaches referenced in Paragraphs 14-19 above, $1,600,000 in relation to Printbox's material breaches referenced in Paragraph 20 above, plus interest as allowed by law, and attorneys' fees and costs pursuant to Ark. Code Ann. §16-22-308 and Federal Rule of Civil Procedure 54.

## COUNT II
## UNJUST ENRICHMENT

28.     Amaze restates and realleges each allegation contained in the foregoing paragraphs of its Complaint as set forth in full herein.

29.     While Amaze attempted to allow Printbox to cure its continuous material breaches of the Subcontract from at least May 12, 2023, through the termination date of the Subcontract Agreement effective on April 26, 2024, Printbox received a real and certain benefit from Amaze's good faith, including full payment on its invoices from May 12, 2023 – January 31, 2024, when Printbox's poor or nonperformance of its obligations under the Subcontract Agreement did not warrant full payment.

30.     Despite its poor or nonperformance of its obligations under the Subcontract Agreement from May 12, 2023 – January 31, 2024, Printbox has unjustly and inequitably refused to reimburse a portion of the payments Amaze made on Printbox's invoices from May 12, 2023 – January 31, 2024.

31.     Printbox has thereby been unjustly enriched in amounts exceeding $800,000.

32.     Amaze is entitled to a judgment for reimbursement of the value of services that Printbox was obligated to but did not perform from May 12, 2023 – January 31, 2024, and the additional costs imposed on Amaze as a result of Printbox's failure to perform.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT

33.     Amaze restates and realleges each allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

34.     The Sam's Club MSA was a valid and enforceable executed by Amaze and Sam's West, Inc., pursuant to which Amaze agreed to provide the Sam's Club Services.

35. Printbox had actual knowledge of the Sam's Club MSA and Amaze's contractual rights and obligations thereunder. Indeed, the Subcontract Agreement expressly incorporated and bound Printbox to the requirements, clauses, provisions, covenants, representations, warranties, and obligations contained in the Sam's Club MSA.

36. Printbox intentionally and improperly interfered with the Sam's Club MSA and Amaze's business expectancy arising therefrom.

37. Specifically, upon information and belief, Printbox engaged in a course of conduct designed to undermine Amaze's relationship with Sam's Club and to replace Amaze as the Service Provider under the Sam's Club MSA.

38. As part of this conduct, Printbox repeatedly failed and/or refused to perform critical obligations required for its performance under the Subcontract Agreement and necessary for Amaze to satisfy its obligations to Sam's Club, including but not limited to:

    a. Failing/refusing to timely deliver a solution for uploading assets across all product families that did not rely on manually uploading CSVs;

    b. Failing/refusing to timely deliver a solution for assigning product and attribute data in the Printbox CMS;

    c. Failing/refusing to timely provide in-app help or built-in guidelines for content vendors;

    d. Failing/refusing to timely respond to questions from Amaze and/or its vendors posted to the parties' shared Slack channel;

    e. Failing/refusing to timely deliver fully configured design workspaces in advance of launch dates; and

    f. Failing/refusing to timely deliver the full mobile solution, causing Sam's Club to pause promotions during the holiday season and negatively impacting revenues.

7

39.     Upon information and belief, Printbox's conduct was not merely negligent or the result of ordinary business disputes, but rather was undertaken intentionally and with the purpose of impairing Amaze's performance under the Sam's Club MSA and positioning Printbox to take over the Sam's Club business relationship for itself.

40.     The culmination of Printbox's intentional interference occurred on February 3, 2024, when Printbox unilaterally terminated Amaze's access to the Printbox CMS and related systems and services necessary for Amaze to perform under the Sam's Club MSA.

41.     By cutting off Amaze's access to the Printbox CMS and related systems, Printbox knowingly and intentionally prevented Amaze from fulfilling its contractual obligations to Sam's Club.

42.     Upon information and belief, following Printbox's interference and impairment of Amaze's contractual performance, Sam's Club terminated the Sam's Club MSA with Amaze, and Printbox thereafter entered into a direct contractual relationship with Sam's Club to provide substantially the same services previously provided by Amaze.

43.     Printbox's conduct was intentional, improper, malicious, and without legal justification or privilege.

44.     As a direct and proximate result of Printbox's tortious interference of the Sam's Club MSA and Amaze's business expectancy, Amaze has suffered substantial damages, including but not limited to:

   a.     loss of revenues and profits under the Sam's Club MSA;

   b.     loss of business goodwill and reputation;

   c.     consequential and incidental damages associated with the disruption and termination of the Sam's Club relationship; and

8

d.      additional damages in an amount to be proven at trial, but believed to exceed $1,600,000.

45.    Printbox's conduct was willful, wanton, malicious, and undertaken in conscious disregard of Amaze's rights, thereby entitling Amaze to recover punitive damages in an amount sufficient to punish Printbox and deter similar misconduct.

## PRAYER FOR RELIEF

For these reasons, Plaintiff Amaze prays for judgment against Defendant Printbox for the following:

a.      Actual damages sustained by Amaze as a result of Printbox's actions, including without limitation the $800,000 in relation to Printbox's material breaches of the Subcontract Agreement referenced in Paragraphs 14-19 above, and $1,600,000 in relation to Printbox's material breach referenced in Paragraph 20 above;

b.      For the amount that Printbox has received from Sam's Club in place of Amaze as a result of its tortious interference with the Sam's Club MSA between Amaze and Sam's Club;

c.      Compensatory damages, consequential damages, and punitive damages recoverable as a result of Printbox's intentional interference of the Sam's Club MSA and Amaze's business expectancy;

d.      All other damages recoverable at law;

e.      Reasonable attorneys' fees to the extent allowed by law and/or the Agreement;

f.      For costs of suit incurred;

g.      Pre-judgment and post-judgment interest;

h.      For all equitable relief to which Amaze has suffered; and

i.      All other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Amaze hereby demands a trial by jury on the issues so triable.

Dated: May 27, 2026

*/s/ E.B. Chiles IV*
E. B. Chiles IV (ABN 96179)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
cchiles@qgtlaw.com
*Attorneys for Amaze Software, Inc.*

10